UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
SANDRA DENOBREGA MACSWEENEY, JEAN :
DEFRANCO, CHRISTINE GORDON, AMY :
RUBIN and IVKA ZIC, :
                Plaintiffs, :
                :    **MEMORANDUM DECISION**
v. :
                :    11 CV 971 (VB)
ING LIFE INSURANCE AND ANNUITY :
COMPANY and MUTUAL OF OMAHA :
INSURANCE COMPANY, :
                Defendants. :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiffs Sandra Denobrega MacSweeney, Jean DeFranco, Christine Gordon, Amy Rubin, and Ivka Zic bring this action against defendants ING Life Insurance and Annuity Company ("ING") and Mutual of Omaha Insurance Company ("Mutual of Omaha"), asserting they were discriminated against in compensation based on their sex in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 290 et seq.; New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 107; and New York Labor Law ("NYLL"), N.Y. Labor Law § 190 et seq. Before the Court are (1) plaintiffs' motion for leave to file an amended complaint (Doc. #19), which would add a federal claim for violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d), and (2) defendants' motion for judgment on the pleadings (Doc. #21), which includes an opposition to plaintiffs' motion for leave to amend.[1]

      For the reasons set forth below, the Court (1) grants plaintiffs' motion for leave to file an amended complaint; (2) denies defendants' motion for judgment on the pleadings as to the EPA

---

[1] Plaintiffs do not assert a NYCHRL claim in their proposed amended complaint.

1

and NYLL claims; and (3) grants defendants' motion for judgment on the pleadings as to the NYSHRL claim.

The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

## BACKGROUND

For purposes of ruling on a motion for judgment on the pleadings, the Court accepts all factual allegations of the complaint as true.

According to the complaint, plaintiffs Ivka Zic, Jean DeFranco, Amy Rubin, Sandra Denobrega, and Christine Gordon, all females, were hired in 1990, 1991, 2005, 2006, and 2007, respectively, to provide nursing services to E. Matthew Warmbir. Plaintiff Zic is a Registered Nurse ("RN") licensed in New York State, and the other plaintiffs are Licensed Practical Nurses ("LPNs") in New York State.

Defendants ING and Mutual of Omaha are insurance companies. Defendants and Mr. Warmbir entered into a Major Medical Expense Policy (the "Policy"), which requires defendants to pay for Mr. Warmbir's home nursing services. Mutual of Omaha administered the Policy on behalf of ING. Since entering into the Policy, Mr. Warmbir has resided with his mother, Janet Warmbir, in White Plains, New York.

Plaintiffs allege that, pursuant to the Policy, both the Warmbirs and defendants are their employers. The Warmbirs possess the power to hire and fire plaintiffs, determine their work schedules and responsibilities, and supervise the quality of care they render. The Warmbirs also furnish plaintiffs with necessary medical supplies. Defendants determine plaintiffs' hourly pay rates and remit payment to plaintiffs. In order to get paid, plaintiffs complete weekly timesheets which either they or the Warmbirs fax to defendants. Upon receiving plaintiffs' timesheets, defendants mail a check to each plaintiff's home with an explanation of benefits. Defendants

2

and the Warmbirs both maintain records of plaintiffs' pay rates, hours worked, and professional licenses.

Plaintiffs allege the following facts about their wages and those of their male co-workers who also provide home nursing services to Mr. Warmbir. Plaintiff Zic and her male colleague, Kurt Freidhof, are both RNs, yet defendants paid them $50 and $75 per hour, respectively, until mid-2008. Plaintiffs MacSweeney, DeFranco, Gordon, and Rubin, and their male colleague, Jogy Varughese, are all LPNs, yet defendants paid these plaintiffs between $35 and $50 per hour and paid Varughese $74.50 per hour until mid-2008.

In May 2008, plaintiffs told defendants that they believed defendants' wage policy was discriminatory. Defendants responded by equalizing the pay rates of all of the nurses providing care to Mr. Warmbir at $60 per hour. In September 2008, defendants discontinued the equal pay scale and reverted back to the unequal pay rates. In November 2008, defendants advised plaintiff Zic that the reasonable and customary hourly wage for an RN was $45 to $55 per hour. At the same time, defendants advised plaintiffs MacSweeney, DeFranco, Gordon, and Rubin that the reasonable and customary hourly wage for an LPN was $30 to $42 per hour.

Plaintiffs assert that defendants have intentionally discriminated against them based on their gender by using a sex-based formula to set their hourly pay below that of their male co-workers who are similarly qualified and perform equal work, and continue to do so. Plaintiffs further assert the discriminatory pay scale is defendants' usual and customary practice.

## DISCUSSION

### I. Plaintiffs' Motion for Leave to File an Amended Complaint

Rule 15(a) instructs courts to "freely give leave" to amend a complaint when "justice so requires." Fed. R. Civ. P. 15(a)(2). As the Supreme Court has held, absent "undue delay, bad

3

faith[,] dilatory motive on the part of the movant[,] . . . undue prejudice to the opposing party" or "futility of amendment," leave should be "freely given." Foman v. Davis, 371 U.S. 178, 182 (1962).

Plaintiffs move for leave to file an amended complaint to add an additional claim pursuant to the EPA for sex discrimination in the payment of wages. Because plaintiffs have not demonstrated undue delay or bad faith and discovery has not begun, the Court grants plaintiffs' motion.

## II.   Defendants' Motion for Judgment on the Pleadings

At any time after the pleadings close and before trial commences, a party may move for judgment on the pleadings under Rule 12(c). Fed. R. Civ. P. 12(c). See Citibank, N.A. v. Morgan Stanley & Co. Int'l, PLC, 724 F. Supp. 2d 407, 414 (S.D.N.Y. 2010). "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." Cleveland v. Caplaw Enters., 448 F.3d 518, 520 (2d Cir. 2006). In a challenge under Rule 12(c), the Court must accept as true the non-movant's allegations and draw all reasonable inferences in the non-movant's favor. See id. at 521; Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). The Court need not accord "[l]egal conclusions, deductions or opinions couched as factual allegations . . . a presumption of truthfulness." In re NYSE Specialists Sec. Litig., 503 F.3d 89, 95 (2d Cir. 2007).

The allegations in a complaint must meet a standard of "plausibility." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that [plaintiff is entitled to relief]." Ashcroft v. Iqbal, — U.S. —, —, 129 S. Ct. 1937, 1949 (2009). Plausibility "is not

4

akin to a probability requirement"; rather, plausibility requires "more than a sheer possibility." Id.

The Court "must limit itself to the facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991). A document is considered incorporated by reference if it is "in a pleading . . . adopted by reference elsewhere in the same pleading or in any other pleading . . . ." Fed. R. Civ. P. 10(c). The Court may also consider a document not specifically incorporated by reference but on which the complaint heavily relies and which is integral to the complaint. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). This is particularly true when the non-movant either had the document in its possession or knew of the document when bringing suit. See Edison Fund v. Cogent Inv. Strategies Fund, Ltd., 551 F. Supp. 2d 210, 217 (S.D.N.Y. 2008). On the other hand, if the Court is presented with material outside of the pleadings, it should exclude the material in its consideration of the motion for judgment on the pleadings. See Chambers, 282 F.3d at 154.

A.   **EPA Claim**

The EPA provides:

> No employer . . . shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex.

5

29 U.S.C. § 206(d). The statute also prevents an employer from complying with the statute by reducing the wage of any employee. Id.

### 1.   Employment Status

Under the EPA, only an "employer" may be held liable for sex discrimination in the payment of wages. 29 U.S.C. § 206(d). The Fair Labor Standards Act ("FLSA") incorporates the EPA, and the FLSA's definition of "employer" applies to the EPA. 29 U.S.C. § 203. The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). An "employee" is "any individual employed by an employer," and "to employ" means "to suffer or permit to work." 29 U.S.C. §§ 203(e)(1), 203(g). The Supreme Court has construed "employer" expansively because of the FLSA's remedial purpose. Falk v. Brennan, 414 U.S. 190, 195 (1973).

Plaintiffs allege defendants are employers subject to the EPA. In determining whether a person qualifies as an employer, the "overarching concern is whether the alleged employer possessed the power to control the workers in question with an eye to the 'economic reality' presented by the facts of each case." Herman v. RSR Sec. Svcs., LTD., 172 F.3d 132, 139 (2d Cir. 1999) (quoting Goldberg v. Whitaker House Coop., 366 U.S. 28, 33 (1961)). At the motion to dismiss stage, the Court should assess only "whether the plaintiff has alleged sufficient facts to support a facially plausible claim for relief," not whether defendants were employers as a matter of law. Fowler v. Scores Holding Co., 677 F. Supp. 2d 673, 680 (S.D.N.Y. 2009) (finding that it did not need to resolve whether defendants were employers as a matter of law under the NYSHRL at the motion to dismiss stage).

The Second Circuit has instructed district courts to consider five factors in resolving whether a defendant qualifies as an employer under the EPA:

> (1) the degree of control exercised by the [alleged] employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

Brock v. Superior Care, Inc. 840 F.2d 1054, 1058-59 (2d Cir. 1988). The determination is based on a totality of the circumstances, and no one factor is dispositive. Rutherford Food Corp. v. McComb, 331 U.S. 722, 730 (1947). "The ultimate concern is whether . . . the workers depend on someone else's business for the opportunity to render service or are in business for themselves." Superior Care, 840 F.2d at 1059.

Plaintiffs have adequately pleaded that defendants are their employers, at least as that term is defined in the EPA. As to the first factor, plaintiffs allege defendants paid plaintiffs and determined their rates of pay.[2] Courts in this district have found that the receipt of payment for services qualifies an individual as an employee. Barfield v. N.Y. Health & Hosps. Corp., 432 F. Supp. 2d 390, 392 (S.D.N.Y. 2006), aff'd, 537 F.3d 132 (2d Cir. 2008) (finding that plaintiff was "paid and in that sense employed by the nursing referral agencies"); see also Beltre v. Lititz Healthcare Staffing Solutions LLC, 757 F. Supp. 2d 373, 378 (S.D.N.Y. 2010) (rejecting defendant's suggestion that it is not an "employer" because defendant "pays and manages payroll for plaintiffs" and assumed all responsibility for "tax, wage and hour, worker's compensation, and other legal obligations" relating to plaintiffs). Because plaintiffs here assert wage discrimination claims, the fact that defendants both paid plaintiffs directly and determined their

---

[2] Because it is outside the complaint, the Court will not consider the Noel affidavit submitted by defendants stating that Mutual of Omaha, not ING, paid plaintiffs.

rates of pay is particularly compelling. Therefore, although the complaint states the Warmbirs and not defendants controlled plaintiffs' work responsibilities and supervised their work, the Court finds that defendants may be plaintiffs' employers.

The other Superior Care factors also support plaintiffs' allegations. The complaint states that plaintiffs were instructed by the Warmbirs as to their responsibilities and, therefore, suggests plaintiffs were not in a position to exercise independent initiative. As hourly workers, plaintiffs most likely had few, if any, opportunities for profit and loss in defendants' businesses. However, the Court finds this factor of little import because the complaint does not specifically address it. Each plaintiff has provided nursing services to Mr. Warmbir and received compensation from defendants for at least several years, which further supports an employment relationship. With respect to the last Superior Care factor, defendants, as medical insurance providers, require and depend on individuals like plaintiffs to render their services to persons like Mr. Warmbir who have purchased health insurance from defendants.

Because plaintiffs have sufficiently alleged that defendants are "employers," it is unnecessary to discuss whether plaintiffs have adequately pleaded that defendants are "joint employers."

### 2. Coverage

The EPA subjects an employer to liability only if (1) its employee is individually "engaged in commerce or in the production of goods for commerce," or (2) the employer is an "enterprise engaged in commerce or in the production of goods in commerce." 29 U.S.C. § 206(a). Plaintiffs allege they are engaged in commerce and defendants are enterprises engaged in commerce.

An employee is engaged in commerce when a significant part of the employee's work relates to interstate commerce. Boekemeier v. Fourth Universalist Soc'y in the City of New York, 86 F. Supp. 2d 280, 287 (S.D.N.Y. 2000). Significance is measured by the frequency of the employee's direct contacts with other states or with goods or services that have crossed state lines, and the substantial nature of the goods or services involved. See id. (finding that ordering cleaning supplies from out-of-state vendors by telephone and facsimile is sufficient to invoke the FLSA's protection unless the purchases are occasional and pertain to an insubstantial amounts of goods); Jacobs v. N.Y. Foundling Hosp., 483 F. Supp. 2d 251 (E.D.N.Y. 2007), aff'd, 577 F.3d 93 (2d Cir. 2009) (explaining an employee can engage in commerce by "regularly using the mail or the telephone between states"). Plaintiffs allege they regularly faxed their time slips to defendants out-of-state in order to get paid for their nursing services. (Compl. ¶ 36.) The Court finds that plaintiffs have sufficiently alleged they participated in interstate commerce related to their nursing positions.

For an enterprise to be engaged in commerce, "the employee does not need himself to be involved in an activity that affects interstate commerce." Fourth Universalist Soc'y in the City of New York, 86 F. Supp. 2d at 285. The enterprise must have "employees engaged in commerce or in the production of goods for commerce, or [have] employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and [have an] annual gross volume of sales . . . not less than $500,000." 29 U.S.C. § 203(s)(1)(A). An enterprise includes "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose [not including work performed] by an independent contractor." 29 U.S.C. § 203(r)(1). The defendant insurance companies are enterprises, serve nation-wide clients like Mr. Warmbir, and

9

do not assert that they fail to satisfy the gross sales volume requirement. Therefore, they are subject to the EPA.

Based on the foregoing, defendants' motion for judgment on the pleadings is denied with respect to plaintiffs' EPA claim.

### B.  State Law Claims – Employment Status

Similarly to the EPA, the NYLL and NYSHRL hold an "employer" liable for unlawful discrimination in compensation based on an individual's sex. The NYLL prohibits employers from paying employees:

> at a wage at a rate less than the rate at which an employee of the opposite sex in the same establishment is paid for equal work on a job the performance of which requires equal skill, effort and responsibility, and which is performed under similar working conditions, except where payment is made pursuant to a differential based on . . . seniority; . . . merit; . . . quantity or quality of production; or . . . any other factor other than sex.

N.Y. Labor Law § 194.[3] The NYSHRL makes it "unlawful. . . [f]or an employer . . . , because of an individual's . . . sex, . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296. At issue is whether plaintiffs have sufficiently pleaded that defendants are "employers" under the NYLL and NYSHRL.

#### 1.  NYLL

In addition to adopting nearly the same language as the EPA regarding the prohibition of compensation discrimination based on sex, the NYLL defines "employer" similarly to the EPA. N.Y. Labor § 190 (defining "employer" as "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service

---

[3] The NYLL and EPA employ nearly identical language to describe their prohibition of compensation discrimination based on a person's sex. See 29 U.S.C. § 206(d).

[but not] a governmental agency," "employee" as "any individual employed by an employer[,]" and "to employ" as to "suffer or permit to work"). Therefore, the Court's analysis concerning whether defendants are employers under the EPA also applies to the NYLL. See Cannon v. Douglas Elliman, LLC, 2007 U.S. Dist. LEXIS 91139, at *8 (S.D.N.Y. Dec. 10, 2007) (finding "because the FLSA and New York Labor Law employ similar standards with respect to employment status, [the same] test has been used to analyze both federal and state wage claims").

The motion as to the NYLL claim is denied.

### 2. NYSHRL

The NYSHRL defines an employer as an "individual with at least four persons in his employ." N.Y. Exec. Law § 292. To determine whether a defendant is an "employer" within the meaning of the NYSHRL, the Court examines whether the alleged employer: (1) had the power to hire employees; (2) made the payment of salary or wages to the employee; (3) had the power of dismissal over the employee; and (4) had the power to control the employee's conduct. DiPilato v. 7-Eleven, Inc., 662 F. Supp. 2d 333, 348 (S.D.N.Y. 2009). The fourth factor is most important. Id.; see also Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 (2d Cir. 1998).

Plaintiffs have alleged that defendants paid them and determined their payment rates, not that defendants had power to control their conduct. In light of this fact and because plaintiffs have failed to allege that defendants controlled their conduct in any way, the crucial factor for the test, defendants are not plausibly employers under the NYSHRL.

Plaintiffs assert that even if defendants are not primary employers, they are subject to liability under the NYSHRL because they are "joint employers" with the Warmbirs. Two employers are "joint" when they are "separate legal entities, but . . . handle certain aspects of

11

their employer-employee relationship jointly." Arculeo v. On-Site Sales & Mktg., LLC, 425 F.3d 193 (2d Cir. 2005). Relevant factors may include "commonality of hiring, firing, discipline, pay, insurance, records, and supervision." NLRB v. Solid Waste Servs., Inc., 38 F.3d 93, 94 (2d Cir. 1994). "'A joint employer relationship may be found to exist where there is sufficient evidence that the respondent had immediate control over the other company's employees.'" Fowler v. Scores Holding Co., Inc., 677 F. Supp. 2d 673, 681 (S.D.N.Y. 2009) (quoting Solid Waste Servs., 38 F.3d at 94)).

Plaintiffs have not pleaded any facts demonstrating that defendants had immediate control over plaintiffs. In fact, plaintiffs have suggested the exact opposite – that the Warmbirs alone had immediate control over plaintiffs. Moreover, plaintiffs allege that the sole aspect of the employer-employee relationship that defendants handled jointly with the Warmbirs was maintaining employment records. Plaintiffs have not alleged that the Warmbirs consulted defendants with respect to hiring, firing, or supervising plaintiffs, or most significantly, controlling their conduct. In light of these facts, plaintiffs have not met their burden to plead that defendants are "joint employers" under the NYSHRL.

The motion as to the NYSHRL claim is granted.

## CONCLUSION

For all of the foregoing reasons, the Court GRANTS plaintiff's motion for leave to file an amended complaint; DENIES defendants' motion for judgment on the pleadings with regard to the EPA and NYLL claims; and GRANTS defendants' motion for judgment on the pleadings with respect to the NYSHRL claim. Plaintiffs are instructed to file their amended complaint no later than October 17, 2011.

The Clerk is instructed to terminate the pending motions (Doc. #19 and Doc. #21).

Dated: October 12, 2011
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge